UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT MURRAY GALLUP, III,

          Plaintiff,

v.

UNKNOWN VITALE et al.,

          Defendants.
_____/

Case No. 1:22-cv-1076

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by an inmate of the Kent County Correctional Facility under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). However, the Court's preliminary review of Plaintiff's complaint under the PLRA has brought to light Plaintiff's attempt to join unrelated claims against the defendants into a single lawsuit. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined Defendants Vitale, Kent County Sheriff's Department, Kent County Sheriff's Association, Kent County Sheriff's Office, City of Grand Rapids, Glass, Day, Pavlovic, Stelma, Vital Core Health Strategies, Kent County, LaJoye-Young, and Lyons. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

With regard to Plaintiff's claim against Defendants Elliot, Bailey, Walker Police Department, and City of Walker, under the PLRA, the Court is required to dismiss any inmate action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Walker Police Department and City of Walker for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's claims against Defendants Elliot and Bailey under the First, Fifth, Eighth and Fourteenth Amendments. Plaintiff's Fourth Amendment claims against Defendant Elliot for excessive force and Defendant Bailey for unlawful entry will not be dismissed on initial review.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Kent County Jail, City of Grand Rapids, Kent County, Michigan. Plaintiff sues the following Defendants: Kent County Sheriff's Deputy Unknown Vitale; Walker Police Department Sergeant Bertrand Clarence Elliot; Kent County Sheriff's Department; Kent County Sheriff's Association; Kent County Sheriff's Office; City of Grand Rapids, Michigan; Tyler Glass; Deputy Tanner Day; Walker Police Department, City of Walker, Michigan; Lieutenant Jeff Pavlovic; Detective Shawn Anthony Bailey; Lawrence A. Stelma; Vital Core Health Strategies; Kent County, Michigan; Michelle LaJoye-Young, and Bradley J. Lyons. (Compl., ECF No. 1–2, 5, 8.)

Plaintiff alleges that, on or about September 9, 2022, Plaintiff was at home on his back porch when he heard his roommate shout that someone was at the house. (*Id.*, PageID.6.) Plaintiff then heard "some kind of havoc in the house," and "instinctively ran." (*Id.*) When Plaintiff turned around, Plaintiff saw a man he did not know shooting at him. (*Id.*) Plaintiff continued to run and was shot in the back of his right arm/elbow. (*Id.*, PageID.6–7.) Plaintiff later learned that the man who had shot him was Defendant Elliot. (*Id.*, PageID.7.) Prior to shooting Plaintiff, Plaintiff alleges that Defendant Elliot did not announce himself as a police officer. (*Id.*) Defendant Elliot was also not wearing a uniform or any other apparel that would have indicated that he was a police officer. (*Id.*) Plaintiff also later learned that Defendant Bailey had been the individual "ransacking and invading" Plaintiff's home. (*Id.*) Defendant Bailey did not announce himself or otherwise indicate that he was a police officer. (*Id.*)

After being shot, Plaintiff was transported to the hospital for surgery. (*Id.*) After receiving medical treatment, Plaintiff was taken to the Kent County Correctional Facility on September 11, 2022. (*Id.*)

On September 25, 2022, while in custody at the Kent County Correctional Facility, Plaintiff was escorted by Defendant Vitale to an outside medical appointment for a check up and to have his cast changed. (*Id.*, PageID.8.) When the doctor told Plaintiff that Plaintiff would need to be put in a "metal flex-cast," Defendant Vitale told Plaintiff and the doctor that Plaintiff would need to remain in the hard cast because a metal cast would not be permitted at the Kent County Correctional Facility. (*Id.*, PageID.8–9.) Plaintiff claims that he has suffered pain, has problems moving his arm, and needs an additional surgery because he was required to continue to wear the hard cast. (*Id.*, PageID.9.) On October 18, 2022, Plaintiff learned that Defendant Vitale was wrong

3

in his assumption about what types of casts were permitted in the Kent County Correctional Facility. (*Id.*)

Plaintiff filed a grievance against Defendant Vitale related to the aforementioned incident. (*Id.*; ECF No. 1-1, PageID.13.) When Defendant Pavlovic returned the grievance to Plaintiff, Defendant Pavlovic told Plaintiff that Plaintiff was wrong, and that Defendant Vitale had been right. (ECF No. 1, PageID.9.) However, once Plaintiff showed his cast to Defendant Pavlovic, Defendant Pavlovic "started backtracking and lying about what the facility does and doesn't allow." (*Id.*, PageID.10.)

Plaintiff indicates that he intends to bring claims under the First, Fifth, Eighth and Fourteenth Amendments. (*Id.*, PageID.5, 8.) The Court also construes Plaintiff's complaint to raise claims under the Fourth Amendment. He seeks compensatory damages and injunctive relief. (*Id.*, PageID.4.)

## II.  Misjoinder

Plaintiff brings this action against seventeen Defendants, alleging discrete events that took place at two separate locations and more than two weeks apart. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. At this juncture and prior to reviewing the merits of Plaintiff's allegations, the Court reviews whether Plaintiff's claims are misjoined.

### A.  Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved,

5

and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)....
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing

fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. The first event described within Plaintiff's complaint took place on September 9, 2022. On that date, Plaintiff ran from and was shot by Defendant Elliot. The generally chronological presentation of Plaintiff's factual allegations supports identifying Defendant Elliot as the appropriate starting point for the joinder analysis. By accepting Plaintiff's chronological presentation of the facts, the Court is considering the issue of joinder as Plaintiff has presented it in the complaint.

Plaintiff's only claims against Defendant Elliot appear to arise out of the incidents of September 9, 2022. (ECF No. 1, PageID.6–7.) Plaintiff may join all claims he has against Defendant Elliot and all claims against others arising out of this same September 9, 2022, transaction or occurrence. Liberally construed, this includes Plaintiff's claims against Defendant Bailey, who is alleged to have been in Plaintiff's home at the time that Plaintiff ran from and was shot by Defendant Elliott, and claims against the Walker Police Department and the City of Walker, which employs both Defendants Elliot and Bailey. However, no matter how liberally the

7

Court construes the complaint, Plaintiff's claims against the remaining Defendants do not arise out of the same transaction or occurrence that gives rise to Plaintiff's claim against Defendant Elliot. Besides describing the actions of Defendants Elliot and Bailey on September 9, 2022, Plaintiff does not mention any other Defendant in his description of the September 9, 2022, events, and he does not provide the Court with any facts that would allow the Court to infer any connection.[1] Accordingly, the Court concludes that Defendants Vitale, Kent County Sheriff's Department, Kent County Sheriff's Association, Kent County Sheriff's Office, City of Grand Rapids, Glass, Day, Pavlovic, Stelma, Vital Core Health Strategies, Kent County, LaJoye-Young, and Lyons are misjoined.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action Defendants Vitale, Kent County Sheriff's Department, Kent County Sheriff's Association, City of Grand Rapids, Glass, Day, Pavlovic, Stelma, Vital Core Health Strategies, Kent County, LaJoye-Young, and Lyons and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts

---

[1] Plaintiff's claims against Defendants Vitale, Pavlovic, and the Kent County Sheriff's Department relate to Plaintiff's treatment while at the Kent County Correctional Facility on and after September 25, 2022 (ECF No. 1, PageID.8–10), separate from Plaintiff's September 9, 2022, arrest. As to Defendants Kent County Sheriff's Association, City of Grand Rapids, Glass, Day, Stelma, Vital Core Health Strategies, Kent County, LaJoye-Young, and Lyons, while Plaintiff lists these individuals and entities as "Defendants," Plaintiff does not include any factual allegations against them in the body of his complaint.

8

with authority to allow a dispensable nondiverse party to be dropped at any time. . . .' " (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. To Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Plaintiff's complaint, describing events that took place in September 2022, provides no indication that the statute of limitations has or will run on Plaintiff's claim against Defendants Vitale, Kent County Sheriff's Department, Kent County Sheriff's Association, Kent County Sheriff's Office, City of Grand Rapids, Glass, Day,

9

Pavlovic, Stelma, Vital Core Health Strategies, Kent County, LaJoye-Young, and Lyons, and has provided no basis for this Court to conclude that Plaintiff would suffer gratuitous harm if claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Vitale, Kent County Sheriff's Department, Kent County Sheriff's Association, Kent County Sheriff's Office, City of Grand Rapids, Glass, Day, Pavlovic, Stelma, Vital Core Health Strategies, Kent County, LaJoye-Young, and Lyons from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

If Plaintiff wishes to proceed with his claims against Defendants Vitale, Kent County Sheriff's Department, Kent County Sheriff's Association, Kent County Sheriff's Office, City of Grand Rapids, Glass, Day, Pavlovic, Stelma, Vital Core Health Strategies, Kent County, LaJoye-Young, and Lyons, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee, or seeking and obtaining *in forma pauperis* status.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff purports to bring claims for violations of his rights under the First, Fifth, Eighth and Fourteenth Amendments. (ECF No. 1, PageID.5, 8.) The Court finds that Plaintiff also brings Fourth Amendment claims against Defendants Elliot, Bailey, Walker Police Department, and City of Walker for unreasonable search and seizure.

### A. Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." According to the facts alleged in Plaintiff's complaint, the Court finds that Plaintiff brings Fourth Amendment claims against Defendants Elliot, Bailey, Walker Police Department, and City of Walker.

#### 1. Defendant Elliot

Plaintiff alleges that Defendant Elliot used excessive force against Plaintiff on September 9, 2022, shooting Plaintiff in the back of the arm.

> Excessive force claims can be resolved under the Fourth, Eighth and Fourteenth Amendments—the applicable amendment depends on the plaintiff's status at the time of the incident: a free citizen in the process of being arrested or seized; a convicted prisoner; or someone in "gray area[s]" around the two.

*Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015). "Where, as here, [an] excessive force claim arises in the context of an arrest or investigatory stop of a free person, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting U.S. Const. amend. IV).

The right to make an arrest or investigatory stop has long been recognized to permit "some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)). Determining whether the force used in a seizure was "reasonable" within the meaning of the Fourth Amendment requires consideration of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

12

confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 138 (1978)). Moreover, the reasonableness of the force must be judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* at 396.

Plaintiff alleges that he was on his back porch when he heard a commotion and began running from a man that he did not recognize. (ECF No. 1, PageID.6–7.) Plaintiff alleges that after doing nothing other than run away, Plaintiff was shot in the back of the arm by Defendant Elliot. (*Id.*) The Supreme Court has long held that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead," even if that suspect is fleeing police. *Garner*, 471 U.S. at 11. Thus, "[a]s a matter of law, an unarmed and nondangerous suspect has a constitutional right not to be shot by police officers." *Floyd v. City of Detroit*, 518 F.3d 398, 407 (6th Cir. 2008) (citing *Sample v. Bailey,* 409 F.3d 689, 696 (6th Cir. 2005)). Taking Plaintiff's facts as true, as is required at this stage of the litigation, the Court finds that Plaintiff has stated a Fourth Amendment claim against Defendant Elliot for excessive force.

### 2. Defendant Bailey

Plaintiff's claim against Defendant Bailey is less clear. Plaintiff alleges only that, during the events of September 9, 2022, Defendant Bailey was the intruder "ransacking and invading" Plaintiff's home. (ECF No. 1, PageID.7.) Plaintiff also alleges that Defendant Bailey, like Defendant Elliot, failed to identify himself as a police officer; and that Plaintiff did not know they were officers because they were not in uniform. *Id*.

Government entry into a home is considered a "search" implicating the Fourth Amendment, regardless of what occurs inside. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *Payton v. New York*, 445 U.S. 573, 585 (1980). With its prohibition against unreasonable seizures, the Fourth Amendment also protects against unreasonable seizures. U.S. Const. amend. IV.

However, the mere fact that a police officer "invad[ed]" Plaintiff's home, as alleged by Plaintiff, does not make the officer's entry unreasonable under the Fourth Amendment. Indeed, there are many circumstances in which a police officer is entitled to enter a home without committing a Fourth Amendment violation. *See Thacker v. City of Columbus,* 328 F.3d 244, 252 (6th Cir. 2003) (explaining that the Fourth Amendment's "reasonableness requirement generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home"); *see also, e.g.*, *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) ("[W]arrants are generally required to search a person's home or his person unless the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."); *Andrews v. Hickman Cnty., Tenn.*, 700 F.3d 845, 854 (6th Cir. 2012) (explaining that "[a]search conducted pursuant to voluntarily obtained consent is a well-recognized exception to the Fourth Amendment's warrant requirement" (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973))).

Here, Plaintiff is very thin on factual allegations concerning Defendant Bailey's entry into Plaintiff's home. Plaintiff does not expressly allege that Defendant Bailey's entry was unlawful, that it was done without a warrant, or that Defendant Bailey's "search" was otherwise unreasonable. However, giving Plaintiff as a pro se litigant every benefit of the doubt on screening, his allegations regarding lack of announcement as officers, and lack of uniforms or other identifying features as officers; and his use of the term "invading" will be construed at this stage to allege an unwarranted or otherwise unlawful entry.[2] The Court will not screen the claim at this stage.

---

2 The use of the term "ransack" could also arguably be interpreted as an allegation of unreasonable execution of even a lawful entry. *See, e.g., Dalia v. United States*, 441 U.S. 238 (1979); *United States v Whisnant*, 391 F. App'x 426, 429-30 (6th Cir. 2010).

14

### 3. Walker Police Department and City of Walker

Liberally construed, Plaintiff alleges that, at the time of the September 9, 2022, events, the Walker Police Department and City of Walker employed Defendants Elliot and Bailey. (ECF No. 1, PageID.7.)

As an initial matter, with respect to Defendant Walker Police Department, it is well settled in Michigan that a police department is not a legal entity capable of being sued in a 42 U.S.C. § 1983 action. *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007); *Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997) (discussing that a city police department is merely an agency of the city, not a legal entity, and therefore is not a proper defendant in a § 1983 lawsuit). Thus, Walker Police Department is an improper defendant and is entitled to judgment as a matter of law. *Id.*

With respect to Defendant City of Walker, a local government such as the City of Walker "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–37 (2010) (citing *Monell*, 436 U.S. at 694). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509. At this stage, a plaintiff can demonstrate a policy or custom by alleging facts that

show one of the following circumstances: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Lipman*, 974 F.3d at 747 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Plaintiff's action fails at this first step because his allegations have not identified any policy or custom of the City of Walker, much less a custom or policy that could be said to have caused the alleged constitutional violation. Plaintiff does not allege any "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the City of Walker that could be said to have caused the alleged constitutional violations. *See Monell*, 436 U.S. at 690. Plaintiff also has not identified a custom of the City of Walker "so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cty.*, 103 F.3d at 507 (citations and quotations omitted).

Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Therefore, the Court will dismiss Plaintiff action against the City of Walker because Plaintiff fails to state a claim upon which relief may be granted.

### B. First Amendment

Although Plaintiff references the First Amendment in his complaint, he fails to set forth any facts that would give rise to a First Amendment claim. The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I. Plaintiff's complaint does not implicate religion, the press, the right to peaceably assemble or to petition the government, and Plaintiff does not allege that he spoke with either Defendant Elliot or Defendant Bailey so as to implicate Plaintiff's freedom of expression. Accordingly, the Court will dismiss Plaintiff's First Amendment claims.

### C. Fifth Amendment

Plaintiff likewise fails to state a Fifth Amendment claim. The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V. These protections bear no relation to the events of September 9, 2022, described within Plaintiff's complaint. Moreover, while the Fourteenth Amendment applies to the "activities of the states and their instrumentalities . . . the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (citations omitted). Plaintiff does not allege that Defendants Elliot, Bailey, and the City of Walker are the federal government or federal employees. For these reasons, Plaintiff's Fifth Amendment claims will also be dismissed.

### D. Eighth Amendment

The events of September 9, 2022, also do not give rise to an Eighth Amendment claim. As described above, though claims of excessive force may arise under the Eighth Amendment, *Coley*, 799 F.3d at 537, where the force is alleged to have occurred in the "context of an arrest or

investigatory stop of a free person," it falls within the protections of the Fourth, not the Eighth, Amendment, *Graham*, 490 U.S. at 394. *See also Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen, while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." (citations omitted)). Therefore, the Court will dismiss Plaintiff's Eighth Amendment claims.

### E. Fourteenth Amendment

Finally, Plaintiff indicates that he intends to bring claims under the Fourteenth Amendment but does not specify the nature of his Fourteenth Amendment claims. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). However, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Fourth Amendment, not Fourteenth, is the proper vehicle to "define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial." *Radvansky*, 395 F.3d at 313 (internal citations omitted) ("[S]ubstantive due process does not extend to claims for false arrest and . . . such claims are properly brought under the Fourth Amendment.").

Because Plaintiff's claims concerning the events of September 9, 2022, are properly governed by the Fourth Amendment's protection against unreasonable searches and seizures, the Court will dismiss any Fourteenth Amendment claims.

18

**Conclusion**

The Court has reviewed Plaintiff's complaint under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that Defendants Vitale, Kent County Sheriff's Department, Kent County Sheriff's Association, Kent County Sheriff's Office, City of Grand Rapids, Glass, Day, Pavlovic, Stelma, Vital Core Health Strategies, Kent County, LaJoye-Young, and Lyons are misjoined. The Court will drop them as parties and dismiss Plaintiff's claims against them without prejudice.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Walker Police Department and City of Walker will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's claims against Defendants Elliot and Bailey under the First, Fifth, Eighth, and Fourteenth Amendments. Plaintiff's Fourth Amendment claims against Defendant Elliot for excessive force and Defendant Bailey for unlawful entry remain in the case.

An order consistent with this opinion will be entered.


Dated:    February 22, 2023            /s/ Robert J. Jonker
                                       Robert J. Jonker
                                       United States District Judge